UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § § | |
| VS. | § § | CRIMINAL ACTION NO. 6:13-CR-108 |
| JOE ANGEL CASTILLO and GISELLE LYSETTE GONZALEZ, | § § § § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

If a highway sign advises "Left Lane for Passing Only," it is illegal in Texas to drive in the left lane when not passing another vehicle. The suppression motions in this case present the issue whether an officer has reasonable suspicion to believe this traffic law has been violated when he sees a vehicle cruising in the left lane, but did not see the vehicle drive by the nearest "Passing Only" sign.

### I. BACKGROUND

The following facts are essentially uncontested. During the early morning hours of November 11, 2013, Texas Department of Public Safety Trooper Jeremiah Collins was conducting traffic patrol on US Highway 59 just north of Farm to Market Road 1686 in Victoria County. Parked on a road in front of a gas station just off the highway, he observed a white Ford Explorer driving north in the left hand lane. A sign reading "Left Lane for Passing Only" stands on US 59 roughly 5.3 miles behind where Collins first saw the Explorer. Docket Entry No. 37 at

1

7:11–12. A dashboard video Collins recorded at a later date, *see* Govt. Ex. 2, shows the highway from the "Passing Only" sign to the gas station where he was parked on November 11. In that 5.3-mile interval, US 59 North intersects several county roads and turnarounds, and two exit and entrance ramps. *Id.* at 2:30–7:00. One of the exit ramps is connected to an overpass leading to gas stations and other rest stops.

After his initial observation, Collins began to follow the Explorer. He was not able to drive directly behind it for several miles; a three-point turn out of the street, followed by a stop sign, compounded by drivers on the highway who slowed down in his presence, kept him from driving directly behind or next to the Explorer. So for approximately 2.7 miles, he weaved in and out of traffic, trying to catch up to the Explorer, but never losing sight of it. *Id.* at 9:23–25. Finally, roughly 8 miles from the "Passing Only" sign, Collins was behind the Explorer. *Id.* at 26: 5–9. From that point, Collins followed the Explorer for an additional 3 miles. *Id.* Twice, he drove up beside it and then pulled back to give the driver an opportunity to change lanes. *Id.* at 9:1–9. But the driver kept the Explorer in the left lane.

When Collins looked over to the passenger side door, he saw a young female who averted her eyes and stared directly ahead on the road. *Id.* at 10:20–25. Believing this might be a human trafficking situation, Collins pulled the Explorer

2

over. At the point of the traffic stop, he was roughly 6 miles from where he first saw the Explorer and 11 miles from the sign. When the female passenger rolled down the window, Collins saw three people huddled between the backseat and the front seat on the floorboard in a fetal position. *Id.* at 12:3–11. He then identified the driver as Defendant Joe Angel Castillo and the passenger as Defendant Giselle Lysette Gonzalez. They were charged with bringing in and harboring aliens in violation of 8 U.S.C. section 1324. They now argue that the traffic stop violated the Fourth Amendment because Collins did not have a reasonable suspicion to believe that Castillo committed a traffic violation.[1]

## II.  DISCUSSION

### A. Texas law on driving in the left lane without passing

The Court first turns to the legal status of driving in the left lane without passing. There is no Texas traffic law specifically addressing the issue. But a traffic sign can make it a violation to drive in the left lane without passing. Section 544.004(a) of the Texas Transportation Code states that the "operator of a vehicle or streetcar shall comply with an applicable official traffic-control device placed as provided by this subtitle." In *Abney v. State*, the Texas Court of Criminal Appeals concluded that section 544.004(a) "states that an operator of a vehicle shall comply with an *applicable* official traffic control device such as a 'left lane for passing

---

[1] They do not challenge the reasonableness of the stop or questioning from the point that Collins pulled them over. Docket Entry No. 37 at 13:9–12.

only' sign. Without such a sign present within a reasonable distance of the traffic stop, there is no offense." 394 S.W.3d 542, 548 (Tex. Crim. App. 2013) (emphasis in original); *see also United States v. Garcia*, 976 F. Supp. 2d 856, 864 (N.D. Tex. 2013) (concluding, based on *Abney*, that "disobeying a traffic control device, such as a 'left lane for passing only' sign, can constitute an offense but only if a driver had 'notice' of the traffic control device and failed to obey it."). On this question of state law, the Court follows *Abney* and concludes that section 544.004 requires notice, in the forum of a traffic control device, for a violation to result.[2] Thus, the dispositive question for these suppression motions is whether Collins had reasonable suspicion that the Explorer passed the sign providing that notice.[3]

### B. Reasonable Suspicion

"For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (citation omitted). "The Supreme Court has stated that in making a reasonable suspicion inquiry, a

---

[2] In an unpublished opinion, the Fifth Circuit held that the defendant "failed to carry his burden on plain error review of demonstrating that the Texas Transportation Code requires the traffic control device to be in direct proximity to the location of the alleged violation." *United States v. Castro*, 480 F. App'x 782, 784 (5th Cir. 2012). If *Castro* controlled, the location of the sign would not even be at issue. But like *Garcia*, the Court concludes that *Castro* is no longer apposite and that "*Abney* is the state of the law as to the current relevance and construction of the statute at issue." *Garcia*, 976 F. Supp. 2d at 864 n.1.

[3] Castillo and Gonzalez do not argue that the warning sign was not a "reasonable distance" from where Collins pulled them over.

4

court 'must look at the 'totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing.'" *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)).[4] The "likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 273. A Supreme Court decision from earlier this year reiterates this relatively low "reasonable suspicion" threshold, observing that the "level of suspicion the standard requires is 'considerably less than proof of wrongdoing by a preponderance of the evidence,' and 'obviously less' than is necessary for probable cause." *Navarette v. California*, 134 S. Ct. 1683, 1687 (2014) (citation omitted). Justice Scalia, who found reasonable suspicion lacking in *Navarette*, nonetheless implied that a probability of "1 in 10" or even "1 in 20" would satisfy the standard. *Id.* at 1695 (Scalia, J., dissenting).

A substantially higher probability exists in this case that the Explorer had seen the "Passing Only" sign and thus, that Castillo had committed a traffic violation. Collins first observed the Explorer 5.3 miles from the nearest "Passing Only" sign. Highway 59 is a major highway linking the border town of Laredo to Houston, with Victoria being the only city between the border and Houston

---

[4] Thus, what matters is the particular facts that Collins knew at the time he made the stop. Castillo and Gonzalez did not challenge Collins's testimony that he knew where the "Passing Only" sign was located. Docket Entry No. 37 at 7:3–12. And the fact that he had been stationed in Victoria for one year, *id.* at 7:21, corroborates that testimony.

5

suburbs with a sizeable population. This 5.3 mile stretch of US 59 does not pass through heavily populated areas, unlike the parts of US 59 that are in Houston. Indeed, the dashboard video from Collins's vehicle, combined with his testimony at the suppression hearing, show that there are few heavily travelled routes that enter US 59 after the "Passing Only" sign and before Collins first observed the Explorer: only two on-ramps, several county roads, and few turnarounds interrupt US 59 in that critical 5.3 mile stretch. Docket Entry No. 37 at 18:18–25, 19:1; Gov't Ex. 2 at 2:30–7:00.

The reasonable suspicion standard requires the Court to make the following probabilistic determination: What percentage of vehicles driving on US 59 at the exact point where Collins first observed the Explorer had passed the sign located 5.3 miles behind them? The evidence and "common [] sense" indicate that the answer is over 50%, and likely much higher. *Cf. Navarette*, 134 S. Ct. at 1690 ("Reasonable suspicion depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." (citation and quotation marks omitted)). The only vehicles that would have entered US 59 after the sign would likely have come from minor roads that the dashboard video from that night—and the dashboard video taken later—indicate are not a heavy source of traffic. The percentage of drivers who would have entered the

highway for the first time on one of the two entrance ramps,[5] especially late at night, does not reduce the probabilities enough to preclude Collins from having reasonably concluded that the Explorer had been on the highway longer than 5.3 miles.

Castillo and Gonzalez rely on *Abney*, in which the Texas Court of Criminal Appeals held than an officer could not have reasonably suspected a driver "had passed a sign located fifteen to twenty miles behind him." 394 S.W.3d at 549. Some evidence in that case even put the distance between the sign and the traffic stop at 27 miles. *Id.* Allowing an officer to stop a vehicle that far from a traffic control device would, the court determined, open the door to any stop as long as "there is a 'left lane for passing only' sign located anywhere on the highway." *Id.* The key role of the substantial distance in finding the Fourth Amendment violation is apparent from *Abney*'s distinction of *Mouton v. State*, 101 S.W.3d 686 (Tex. App.—Texarkana 2003, no pet.), in which an officer stopped a driver on a highway near mile marker 823 or 824 and suspected that the defendant had passed a warning sign located at mile marker 820. 394 S.W.3d at 549 (seemingly approving of *Mouton* based on the "specific" and articulable facts of that case).[6]

More helpful for Castillo and Gonzalez is a recent federal district court

---

[5] Vehicles that exited Highway 59 to stop at the gas station and then returned to the highway would have seen the "Passing Only" sign. It is thus only new entrants to Highway 59 that should be discounted from the probability assessment.

[6] In any event, unlike the issue discussed above concerning the interpretation of Texas traffic laws, *Abney* is only persuasive authority on a Fourth Amendment question.

7

decision that the Court came across in researching this issue. *See Garcia*, 976 F. Supp. 2d at 861–65. The distance between the sign and the place where the officer in *Garcia* observed the vehicle was similar to this case—about 5 miles, but what concerned the court was that the five-mile stretch, which occurred on Interstate 35 north of Waco, included three on-ramps feeding onto the highway. The court reasoned that "the mere presence of three entrance ramps in this short stretch" of the highway meant that the officer could not have reasonably suspected that the defendant entered the highway from an earlier entryway. *Id.* at 865. Although the officer testified that the entrance ramps connect to "farm-to-market roads that are not heavily travelled," the court placed greater emphasis on his testimony that "there are homes, farms, and gas stations in the vicinity." *Id.* This Court is unfamiliar with the full factual record in *Garcia* and all the details concerning how the highway at issue in that case compares to this case. The situations do seem similar, with essentially the same distance and only one more entryway in *Garcia*. The *Garcia* court, however, did not appear to engage in the probabilistic estimation that the case law, including *Arvizu* and *Navarette*,[7] seems to require for a reasonable suspicion analysis.

    Reduced to that estimate of probabilities, the facts of this case seem to easily surmount the threshold required for reasonable suspicion. Of course, it may have

---

[7] Although *Navarette* did not announce new principles of the law on reasonable suspicion, it did reiterate many of the principles on which this Court bases its ruling.

proven difficult to convict Castillo of the traffic offense under a beyond a reasonable doubt standard, but the Supreme Court has "consistently recognized that reasonable suspicion 'need not rule out the possibility of innocent conduct.'" *Navarette*, 134 S.Ct. at 1691 (quoting *Arvizu*, 534 U.S. at 277). To the extent there are concerns that the "Passing Only" sign is being selectively enforced, the Supreme Court has held that those concerns do not enter this Fourth Amendment calculus. *See Whren v. United States*, 517 U.S. 806, 813 (1996) ("We of course agree with petitioners that the Constitution prohibits selective enforcement of the law based on considerations such as race. But the constitutional basis for objecting to intentionally discriminatory application of laws is the Equal Protection Clause, not the Fourth Amendment.").

### III.  CONCLUSION

For the reasons discussed above, the traffic stop at issue did not violate the Fourth Amendment. Defendants' Motions to Suppress (Docket Entry Nos. 27, 30) are therefore **DENIED**.

**SIGNED** this 30th day of June, 2014.

_____
Gregg Costa
United States Circuit Judge[*]

---

[*] Sitting by designation.